[Cite as *Westlake v. Johnson*, 2026-Ohio-2719.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| CITY OF WESTLAKE, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 115752 |
| v. | : | |
| DAVID JOHNSON, | : | |
| Defendant-Appellant. | : | |

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND VACATED
**RELEASED AND JOURNALIZED:** July 16, 2026

Criminal Appeal from the Rocky River Municipal Court
Case No. 24-CRB-1669

### *Appearances:*

Michael P. Maloney, City of Westlake Director of Law/Chief Prosecutor, and Nathalie E. Supler, City of Westlake Assistant Prosecuting Attorney, *for appellee.*

Joseph C. Patituce, *for appellant.*

EILEEN T. GALLAGHER, P.J.:

{¶ 1} Appellant David Johnson ("Johnson") challenges the judgment of the trial court finding that he violated the terms of his community control. He raises two assignments of error for our review:

1. The trial court erred in finding that Appellant violated the no[-]contact term of probation when the uncontested testimony of the probation officer established that there was no contact between Appellant and the protected parties.

2. The trial court abused its discretion in imposing conditions that specifically prevented Appellant from occupying his own residence in addition to the imposition of GPS monitoring and local incarceration.

{¶ 2} After a thorough review of the record and the applicable law, we find that the trial court erred in determining that Johnson violated the no-contact order. We reverse the judgment of the trial court and vacate Johnson's conviction and sentence for violating a community-control sanction.

## I. Factual and Procedural History

{¶ 3} On August 13, 2025, Johnson was found guilty of aggravated menacing, a misdemeanor of the first degree. He was sentenced to 90 days in jail and ordered to have no contact with the victims, who were his next-door neighbors. Johnson was specifically ordered to stay 500 feet away from the victims.

{¶ 4} Shortly after his sentencing, Johnson moved to modify the terms of his sentence. The court granted the motion on August 29, 2025, and Johnson was released from jail after serving only 21 days of his sentence. The modification also removed the prohibition against Johnson being within 500 feet of the victims. Consequently, Johnson returned to his home, which was located next door to the victims.

{¶ 5} Soon after the court granted the motion, the appellee City of Westlake ("City") filed an objection. The court held a hearing on the City's objection on

September 10, 2025. At the hearing, the City argued that the court had violated Marsy's Law by not notifying the victims prior to Johnson's release from jail. The City further argued against the removal of the 500-feet restriction. The victims were present in court and made a statement requesting that the court reimpose the original conditions of the no-contact order.

{¶ 6} Johnson's community-control officer ("CCO") addressed the court. She stated that Johnson had contacted her within the proper time after his release from jail and that they had spoken several times. The CCO said that she had discussed with Johnson how he was to enter and leave his property so that he would never be in front of the victims' residence. The court did not rule on the City's objection at the hearing.

{¶ 7} The following day, a complaint alleging a community-control violation was filed against Johnson. The complaint stated that Johnson had

> violated the terms of community control by failing to comply with the no-contact order on 9-11-25. At 9:32 a.m., Mr. Johnson entered a vehicle as a passenger and the vehicle drove in front of the victim's home and on 9-11-25 at 4:01 p.m., Mr. Johnson was a passenger in a vehicle that drove past the victim's home and then pulled into his own driveway.

(Tr. I, p. 4-5.)[1]

{¶ 8} The court held a hearing regarding the violation on September 24, 2025. Johnson appeared and denied that he had violated the no-contact order.

---

[1] The record in this case has two transcripts. The transcript from the September 10, 2025 hearing will be referred to as "Tr. I," and the transcript from the hearing on September 24, 2025, will be referred to as "Tr. II."

Johnson's CCO testified as to the circumstances of the alleged probation violation. She testified that she had met and spoken with Johnson following his release from jail. She reiterated that she had discussed with him "boundaries" for when he was at his residence and how he should leave and enter his property. (Tr. II, p. 8.) She stated that Johnson was advised that he should never be in front of the victims' residence or walk past their residence and that he should leave the housing development using a different route. (*Id.*) She testified that Johnson was "very well aware" of these boundaries. (*Id.*)

{¶ 9} The CCO further testified that the victims had contacted her via email to inform her that Johnson had been in a vehicle that had driven past their home that day. (Tr. II, p. 9.) His actions were captured on a Ring camera located on the victims' property that faced Johnson's driveway. (*Id.*)

{¶ 10} The video was played before the court while the CCO narrated what was depicted on screen. She stated that Johnson was seen walking out of his home and getting into a vehicle as a passenger. (Tr. II, p. 9-10.) The vehicle turned toward the victims' home and drove in front of it. (Tr. II, p. 10.)

{¶ 11} The CCO further testified that a second violation occurred later that same day and it was again captured on video by the victims' Ring camera. The second video was also played for the court while the CCO described what was occurring.

{¶ 12} The CCO testified that Johnson was seen wearing the same shirt as in the earlier video. (Tr. II, p. 11.) He was again a passenger in a vehicle that drove in front of the victims' home and then turned into Johnson's driveway. (*Id.*)

{¶ 13} The CCO testified that Johnson came to her office after the September 10, 2025 hearing and they discussed what had happened at the hearing. (Tr. II, p. 14.) She stated that Johnson had told her "that he can't always control what the Ubers – you know, I will say the Drive Shares – can do." (*Id.*) She stated that she told him that he had to "figure out how to make sure [he was] never in front of" the victims' residence. (*Id.*)

{¶ 14} On cross-examination, the CCO acknowledged that the "basic rules of community control" stated that Johnson was to "have no contact with the victims in [his] case. [He was] not to have contact by phone, email, text, through a third party, or by any other means. . . ." (Tr. II, p. 17.)

{¶ 15} The CCO was asked about the no-contact order that had been issued by the court after Johnson was sentenced for aggravated menacing:

> DEFENSE COUNSEL: There was under Section 3 of the no-contact — like the formal no-contact order, it says that Defendant shall stay away from the persons named in this order and shall not be present within 500 feet or blank distance from any persons named in this order, wherever those persons may be found or anyplace the Defendant knows or should know the persons are likely to be, even with the person's permission.
>
> The Defendant accidently [sic] — If the Defendant accidently [sic] comes in contact with named persons on any public or private place, the Defendant must depart immediately. This order includes encounters on public and private roads, highways, and thoroughfare, correct?

CCO: Correct.

DEFENSE COUNSEL: And the part that's important when we're talking about public roads and private roads is this order includes encounters on public and private roads, highways, and thoroughfares, correct?

CCO: Correct.

DEFENSE COUNSEL: Okay. When you had contact with the [victims] that day —

CCO: Yes.

DEFENSE COUNSEL: — did they tell you that they had any interaction with Mr. Johnson?

CCO: No.

DEFENSE COUNSEL: They weren't outside of their home?

CCO: No.

DEFENSE COUNSEL: Okay. The only reason they knew about any of this was because they had the camera angled directly at Mr. Johnson's driveway, correct?

CCO: Correct.

. . .

DEFENSE COUNSEL: So they didn't even report it right when this incident happened?

CCO: Correct.

(Tr. II, p. 18-19.)

{¶ 16} The CCO was then asked about the court's August 29, 2025 order granting Johnson's motion to modify his sentence. In the order, the court amended

the no-contact order to remove the requirement that Johnson not be within 500 feet of the victims. (Tr. II, p. 20.) As of September 3, 2025, Johnson was permitted to return to his residence, and the GPS-monitoring requirement was eliminated. (*Id.*)

{¶ 17} At the conclusion of the hearing, the trial court determined that Johnson had committed a "technical" violation or a "violation in spirit" because Johnson could not "turn left out of [his] driveway, he can turn right." (Tr. II, p. 29.) Accordingly, the court found that "based on the testimony presented, [Johnson] violated the terms of the no-contact order by driving the vehicle either past, near, in front of the victims' residence." (Tr. II, p. 29-30.)

{¶ 18} The court further found the City's objections to the sentence modification well taken. The court reimposed the 500-foot zone of the no-contact order, and Johnson was precluded from returning to his home. He was sentenced to seven days in jail, and the court again imposed GPS monitoring.

{¶ 19} Johnson then filed the instant appeal. The trial court stayed his sentence pending appeal.

## II. Law and Analysis

{¶ 20} In his first assignment of error, Johnson argues that the trial court erred by finding that he violated the terms of his community control. He asserts that he had absolutely no contact with the victims and did not knowingly violate any term ordered by the court.

{¶ 21} A community-control violation or revocation hearing is not a criminal trial; therefore, the State is not required to establish a violation of the terms of

community control beyond a reasonable doubt. *State v. Reese*, 2020-Ohio-4747, ¶ 21 (8th Dist.). Instead, a community-control violation is established by "substantial" evidence. *State v. Cox*, 2018-Ohio-748, ¶ 16 (8th Dist.). "'Substantial evidence has been defined as being more than a scintilla of evidence, but less than a preponderance.'" *State v. Davis*, 2017-Ohio-8873, ¶ 14 (8th Dist.), quoting *State v. McCants*, 2013-Ohio-2646, ¶ 11 (1st Dist.).

{¶ 22} "We review a trial court's decision finding a violation of community control for an abuse of discretion." *State v. Swails*, 2014-Ohio-3711, ¶ 12 (8th Dist.), citing *State v. Hayes*, 2006-Ohio-5924, ¶ 11 (8th Dist.), citing *State v. Miller*, 2004-Ohio-1007 (10th Dist.). "An abuse of discretion occurs when 'a court exercis[es] its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority.'" *State v. Bostick*, 2023-Ohio-3631, ¶ 15 (8th Dist.), quoting *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35.

{¶ 23} At the community-control-violation hearing, the court determined that Johnson had violated the no-contact order by driving in front of the victims' residence. As noted above, the no-contact order imposed by the court at Johnson's sentencing required Johnson to stay 500 feet away from the victims. However, on August 29, 2025, the court removed the distance requirement and did not reimpose the restriction until September 24, 2025.

{¶ 24} The claimed violations occurred on September 11, 2025. On that date, Johnson was precluded from having contact with the victims, but there was no

requirement that he stay 500 feet away from them. That restriction had been removed and had not yet been reimposed by the court.

{¶ 25} Accordingly, to establish a violation of the order, the City was required to demonstrate that Johnson had "contact" with the victims. The no-contact order stated that "[c]ontact includes, but is not limited to, landline, cordless, cellular or digital telephone; text instant messaging; fax; or e-mail; voicemail; delivery service; social media; blogging; writings; electronic communications; posting a message; or communications by any other means directly or through another person." There was no evidence presented at the hearing that Johnson had had any of the above types of contact with the victims.

{¶ 26} The question then becomes whether being driven in front of the victims' residence constituted "contact." Some Ohio courts have found a violation of "no contact" based upon the defendant's proximity to the victim. *See State v. Crosby*, 2020-Ohio-3306 (6th Dist.) (finding violation of no-contact order where defendant, inter alia, parked in victim's driveway and remained at event where victim was present); *State v. Wells*, 2007-Ohio-906 (4th Dist.) (violation of no-contact order where defendant drove closely by the victim's campsite); *State v. Dunaway*, 2002-Ohio-3290 (1st Dist.) (violation where defendant was in proximity of victim in a parking lot, at a restaurant, and at a crowded amusement park).

{¶ 27} Here, there was no evidence presented as to Johnson's proximity to the victims at the time he was driven in front of their residence. The only evidence of the claimed violations was the Ring camera video recordings showing Johnson

being driven in front of the victims' house. There was no testimony that the victims were at their residence during the times that Johnson had been driven in front of their home.

{¶ 28} Because the City did not present any evidence, much less substantial evidence, that Johnson had had contact with the victims, the trial court erred in finding that Johnson violated the no-contact order. Johnson's first assignment of error is sustained.

{¶ 29} His second assignment of error, relating to the reimposition of the 500-feet restriction and the GPS monitoring, is therefore rendered moot.

{¶ 30} The judgment of the trial court is reversed. Johnson's conviction and sentence for violating a community-control sanction are vacated.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Rocky River Municipal Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, PRESIDING JUDGE

EMANUELLA D. GROVES, J., and
EILEEN A. GALLAGHER, J., CONCUR